**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BERNICE FRIMPONG,** | **COMPLAINT** |
| Plaintiff, | |
| -against- | |
| **CROSSWAY FUEL INC, KLIGOF HOLDING CORP.,** JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown, | **CASE NO.: 22-cv-6655** |
| | **JURY DEMANDED** |
| Defendants. | |

## CIVIL COMPLAINT

BERNICE FRIMPONG ("Plaintiff"), as and for her complaint against CROSSWAY FUEL INC, KLIGOF HOLDING CORP., JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown ("Defendants"), respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and was denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the places of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants.

2. Plaintiff files this action complaining of the violations of Title III of the ADA. This action is brought under ADA 42 U.S.C. §12182, §12183, and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 C.F.R. Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 C.F.R. Part 1191, appendices B and D, the 2010 ADA Standards for Accessible Design ("2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296, and New York City Human Rights Law [Administrative Code] §8-107.

3. Plaintiff seeks compensatory and statutory damages, declaratory and injunctive reliefs, attorney's fees, expert fees, and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202, and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district.

7. Venue is also proper in this district because Defendants' property, the public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## PARTIES

8. Plaintiff is, and at all times material to this litigation has been, a resident of the Bronx County, New York.

9. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. §12131, who is expressly authorized to bring this action under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. §2000a-3, §204 of the Civil Rights Act of 1964.

10. Defendant CROSSWAY FUEL INC owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, Sunoco gas station, the convenience store Sunoco Shop at Sunoco gas station ("Sunoco Shop") and the parking lot adjacent to it, which is provided for the use of its customers.

11. Defendant KLIGOF HOLDING CORP. owns, and/or leases (or leases to), and/or has control over, and/or manages, and/or maintains, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the

commercial lot, on which Sunoco gas station and Sunoco Shop are located. The parking lot, which serves, and is adjacent to, Sunoco Shop, is also located on that commercial lot.

12. Defendant KLIGOF HOLDING CORP. leases its building and/or land to its tenant, Defendant CROSSWAY FUEL INC.

13. The store Sunoco Shop, Sunoco gas station, and the adjacent parking lot are the subjects of this lawsuit and are hereinafter referred to as the "Subject Facility".

14. Sunoco Shop, Sunoco gas station, and the adjacent parking lot are located at 1724 Webster Avenue, Bronx, NY 10457.

15. Defendant CROSSWAY FUEL INC owns, and/or leases, and/or manages, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the store under the name Sunoco Shop.

16. Defendant CROSSWAY FUEL INC owns, and/or leases, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or marked, and/or placed signs on, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the parking lot, adjacent to Sunoco Shop, which is provided for the exclusive use of its customers.

17. CROSSWAY FUEL INC is an American for-profit corporation organized under the laws of New York State.

18. CROSSWAY FUEL INC is licensed to conduct business in the State of New York by the New York State Department of State ("NYS DOS").

19. NYS DOS maintains entity information for CROSSWAY FUEL INC in its Corporation and Business Entity Database.

20. The corporate record for CROSSWAY FUEL INC shows neither the name nor address of its chief executive officer.

21. The corporate record for CROSSWAY FUEL INC does not show the address of its principal executive office.

22. The corporate record for CROSSWAY FUEL INC shows neither the name nor address of its registered agent.

23. The corporate record for CROSSWAY FUEL INC shows neither the name nor address of the entity's primary location.

24. The address to which NYS DOS mails process, when accepted on behalf of CROSSWAY FUEL INC, is Crossway Fuel Inc, 1724 Webster Avenue, Bronx, NY 10457.

25. The Office of the City Register of New York City Department of Finance maintains a deed record showing that the commercial lot, on which the Subject Facility is located, is owned by KLIGOF HOLDING CORP.

26. KLIGOF HOLDING CORP. at all relevant times was, and currently is, an owner of the commercial real estate lot in the Bronx County, on which the Subject Facility is located.

27. Defendant KLIGOF HOLDING CORP. is a landlord and leases its building and land, on which the parking lot of the Subject Facility is located, to Defendant CROSSWAY FUEL INC.

28. KLIGOF HOLDING CORP. is an American for-profit corporation organized under the laws of New York.

29. KLIGOF HOLDING CORP. is licensed to conduct business in the State of New York by the NYS DOS.

30. NYS DOS maintains entity information for KLIGOF HOLDING CORP. in its Corporation and Business Entity Database.

31. The corporate record for KLIGOF HOLDING CORP. shows neither the name nor address of its chief executive officer.

32. The corporate record for KLIGOF HOLDING CORP. does not show the address of its principal executive office.

33. The corporate record for KLIGOF HOLDING CORP. shows neither the name nor address of its registered agent.

34. The corporate record for KLIGOF HOLDING CORP. shows neither the name nor address of its primary location.

35. The address to which NYS DOS mails process, when accepted on behalf of KLIGOF HOLDING CORP., is Tanen & Tanen, P.C., 9th Floor, 1180 Avenue of The Americas, New York, NY 10036.

36. KLIGOF HOLDING CORP. owns, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the parking lot adjacent to the store Sunoco Shop.

37. Defendant KLIGOF HOLDING CORP. leases commercial space in its building and/or the entire building to Defendant CROSSWAY FUEL INC, in which the latter operates Sunoco Shop.

38. In the alternative, Defendant KLIGOF HOLDING CORP. leases the commercial lot it owns to Defendant CROSSWAY FUEL INC, on which the latter designed, and/or built,

and/or constructed, and/or erected, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the store Sunoco Shop.

39. In the alternative, Defendant KLIGOF HOLDING CORP. leases the commercial lot it owns to Defendant CROSSWAY FUEL INC, on which the latter designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, and/or operates, and at all relevant times operated, the parking lot adjacent to the Sunoco Shop.

40. The parking lot adjacent to Sunoco Shop has been designed, and/or built, and/or constructed, and/or altered, and/or marked, and/or placed signs on, to be used exclusively by customers of Sunoco Shop.

41. Defendants JOHN DOE 1-X, Limited Liability Companies, Partnerships, and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in the Bronx County, on which the Subject Facility is located, and of the building in which it operates. Either one or several of them may be a landlord and lease its/their building and land, on which the parking lot of the Subject Facility is located, to Defendant CROSSWAY FUEL INC.

42. Either one, or all, Defendants, jointly, or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, of the commercial lot in the Bronx County, on which the Subject Facility is located, who jointly, or severally, owned, and/or leased, and/or managed, and/or had control over, and/or designed, and/or constructed, and/or built, and/or altered, and/or modified, and/or painted, and/or marked, and/or placed signs on, and/or operated, and/or maintained, the

parking lot adjacent to Sunoco Shop, which is provided for the purpose of enabling customers of the store to park in it and visit the store.

43. Either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or erected, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered the building, and/or the store Sunoco Shop, which is part of the Subject Facility.

44. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration, and/or operation of the parking lot, which is part of the Subject Facility.

45. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration, and/or operation of the store Sunoco Shop, which is part of the Subject Facility.

46. Sunoco Shop is a store and is thus a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5), the New York State Human Rights Law §292(9) and the New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

## STATUTORY SCHEME

47. On July 26, 1990, Republican President George H. W. Bush, who himself subsequently
    became disabled and had to rely on a wheelchair later in his life, signed the ADA into law,
    which extended essential civil rights to individuals with disabilities.

48. That law had been championed by Senator Robert J. Dole, who himself had suffered from
    a significant disability, which resulted from the wounds he had received while fighting in
    Italy during liberation of the world from the fascists' dictatorship during World War II.

49. On that day, July 26, 1990, the United States of America enacted the ADA, establishing
    extremely important and incontrovertibly indispensable civil rights for individuals with
    disabilities, including the right to full and equal enjoyment of goods, services, facilities,
    privileges, and access to places of public accommodation.

50. Congress made the following findings:

    a. Some 43,000,000 Americans have one or more physical
       or mental disabilities, and this number is increasing as
       the population as a whole is growing older;
    b. Historically, society has tended to isolate and segregate
       individuals with disabilities, and, despite some
       improvements, such forms of discrimination against
       individuals with disabilities continue to be a serious and
       pervasive social problem;
    c. Discrimination against individuals with disabilities
       persists in such critical areas as employment, housing,
       public accommodation, education, transportation,
       communication, recreation, institutionalization, health
       services, voting and access to public services;
    d. Individuals with disabilities continually encounter
       various forms of discrimination, including outright
       intentional exclusion, the discriminatory effects of
       architectural, transportation, and communication
       barriers, overprotective rules and policies, failure to
       make modifications to existing facilities and practices,
       exclusionary qualification standards and criteria,

segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e.  The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

51. Furthermore, Congress also explicitly stated that the ADA had to:

a.  Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b.  Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

52. Furthermore, pursuant to 42 U.S.C. §12182 and 28 C.F.R. §36.201(a), the congressional intent was to ensure that no place of public accommodation may discriminate against an individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

53. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the

ADA was January 26, 1992, or January 26, 1993, if a defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 C.F.R. §36.508(a).

54. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

55. ADA 42 U.S.C. §12182(a), the New York State Civil Rights laws, the New York State Human Rights laws, and the New York City Human Rights laws recognize individuals with disabilities as a protected class.

56. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 C.F.R. §36.201(a) and (b).

57. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 C.F.R. §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

58. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, 28 C.F.R. §36.201(a) and (b), the New York State Civil Rights laws, and the New York State and City Human Rights laws.

59. The Subject Facility affects interstate commerce within the meaning of the ADA, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104 Place of public accommodation (5).

60. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, 28 C.F.R. §36.201, the New York State Civil Rights laws, and the New York State and City Human Rights laws.

61. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights laws.

62. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 C.F.R. §36.304

63. Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability, 28 C.F.R. §36.304.

64. Removal of the architectural barriers is readily achievable by Defendants.

65. Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

## FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION

### Plaintiff's Background

66. Plaintiff is a 40-year-old-woman.

67. Plaintiff had been diagnosed with poliomyelitis by her treating physician when she was three years old.

68. Furthermore, Plaintiff's left leg is shorter than her right leg.

69. Plaintiff had not been able to walk for the past 20 years.

70. Plaintiff's physician had prescribed her a wheelchair.

71. Plaintiff depends on her wheelchair for mobility and uses it every day.

72. Plaintiff cannot move about without her wheelchair.

73. Plaintiff uses a manual wheelchair and moves about by rotating its wheels with her hands.

74. When Plaintiff travels in a van or car, she needs appropriate and statutorily mandated access aisle next to accessible parking space to exit vehicle with her wheelchair.

75. Plaintiff requires an accessible parking space located close to entrance of a facility.

76. Routes connecting accessible spaces and all features, goods and services of a facility must be level, properly sloped, sufficiently wide and without cracks, holes or other hazards that can pose danger of tipping, catching wheels, or falling.

77. Plaintiff is "disabled" under the statute, which in pertinent part states:

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual…. The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.
>
> 28 C.F.R. §36.104 (italics in original).

78. There are three parking spaces in the parking lot of the Subject Facility.

79. One parking space in the Subject Facility's parking lot is identified as accessible by blue marking lines on the pavement and an international symbol of accessibility painted on the ground.

80. There is one access aisle in the parking lot of the Subject Facility, located to the left of the accessible space.

81. In April 2022 Plaintiff came to Defendants' Subject Facility to enjoy full and equal access to, and the benefits of, all the accommodations and services offered by Defendants.

82. Plaintiff visited the Subject Facility in an accessible van.

83. The accessible van parked in the accessible parking space of the Subject Facility's parking lot.

84. Plaintiff had difficulties transferring between the accessible van and the ground of the parking lot of the Subject Facility with her wheelchair because of the cross slope of the accessible parking space.

85. Plaintiff had difficulties rotating the wheels of her wheelchair with her hands in the access aisle, because of its steep cross slope.

86. Plaintiff was not able to extend her knees and toes at the counter at Sunoco Shop, because there was no space for them under the counter.

87. Plaintiff purchased an item in Sunoco Shop and obtained a receipt.

88. Frustrated, disappointed, and humiliated, Plaintiff left the Subject Facility.

89. The Subject Facility was designed by Defendants, who did not have Plaintiff and her needs in mind, to accommodate her and facilitate her access to the Subject Facility.

90. The parking lot of the Subject Facility was designed by Defendants, who disregarded the accessibility requirements of Plaintiff by failing to accommodate her and facilitate her access to the store.

91. The parking lot of the Subject Facility was not designed to accommodate the needs of Plaintiff.

92. The parking lot of the Subject Facility was not constructed to facilitate access to Sunoco Shop by Plaintiff.

**Plaintiff Intends to Return to the Subject Facility**

93. The Subject Facility is located in Tremont neighborhood, in the Bronx, NY.

94. The Subject Facility is located within 2.5 miles from Plaintiff's home in the Bronx.

95. Plaintiff enjoys coming to Tremont.

96. The Subject Facility is conveniently located.

97. Plaintiff intends to visit the Subject Facility again in the future, purchase items offered for sale in Sunoco Shop and enjoy its services as soon as the architectural barriers are removed.

**Plaintiff is a Tester**

98. Plaintiff is an advocate of the rights of disabled persons and is a tester for the purpose of asserting her civil rights.

99. Plaintiff visits places of public accommodation to determine whether they are compliant with the ADA.

100.    Completely independent of the personal desire to have access to the Subject Facility free of illegal barriers to access, Plaintiff is a tester for the purpose of discovering, encountering, and engaging discrimination against the disabled in public accommodations.

101.    As a tester, Plaintiff visits public accommodations and purposely encounters barriers to access.

102.    Plaintiff purposely tests barriers to access in public accommodations to determine whether they are unlawful.

103.    When Plaintiff determines that barriers to access are unlawful, she initiates a legal action against an owner, operator, lessor, or lessee of a public accommodation to end discrimination.

104.    Following completion of a legal action, Plaintiff intends to return to the same place of public accommodation to ensure its compliance with the ADA.

105.    As a tester, Plaintiff visited Defendants' Subject Facility to encounter architectural barriers to access.

106.    As a tester, Plaintiff personally encountered the architectural barriers in Defendants' Subject Facility.

107.    Plaintiff visited Sunoco Shop, purchased an item in it, obtained a receipt, and encountered ADA violations in it.

108.    Plaintiff visited Defendants' parking lot in an accessible van and encountered numerous ADA violations in it.

109.    Following conclusion of this lawsuit, Plaintiff intends to return to the Subject Facility as a tester to determine whether Defendants remediated the ADA violations in the parking lot and Sunoco Shop and to purchase items in it.

110.     Plaintiff's motivation to return to the Subject Facility in part stems from her desire to utilize ADA litigation to make her community more accessible for Plaintiff and other disabled individuals, who cannot visit Defendants' Subject Facility because of the architectural barriers.

111.     Plaintiff pledges to do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court, including returning to the Subject Facility as soon as it is accessible, so that an injunction can be issued by this Court upon Defendants, ordering them to remediate the numerous ADA violations in the Subject Facility.

112.     Following conclusion of this lawsuit, Plaintiff intends to visit the Subject Facility twice a year to ensure that Defendants comply with the ADA and to purchase goods in Sunoco Shop.

113.     Plaintiff is confident that Defendants will not remediate the ADA violations in their Subject Facility without the Court's intervention.

114.     Plaintiff will continue to suffer discrimination without the Court's intervention.

115.     Plaintiff will enforce the injunction once it is issued by the Court.

**Violations of Title III in the Subject Facility**

116.     Plaintiff has difficulties gaining access to the Subject Facility, because of the unlawful architectural barriers, and therefore has suffered an injury in fact.

117.     Since at least April 2022 Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil laws, and the New York State and City Human Rights laws.

118.    Plaintiff has difficulties visiting Defendants' Subject Facility, is being discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights laws, and the New York State and New York City Human Rights laws.

119.    The barriers to access to the Subject Facility have made it difficult for Plaintiff to visit it and have caused her embarrassment, humiliation, and frustration.

120.    Because the Subject Facility is a public accommodation, Defendants are responsible for complying with ADA 28 C.F.R. §36.304.

121.    The numerous architectural barriers to access the Subject Facility have greatly inconvenienced Plaintiff.

122.    The Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 C.F.R. §36.302, and §36.304.

123.    The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of Title III regulations at 28 C.F.R. Part 36, subpart D, and 2004 ADAAG at 36 C.F.R. Part 1191, appendices B and D.

124.     Defendants are discriminating against Plaintiff, because at their Subject Facility they are denying her access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages, and/or accommodations of the building, and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

125.     There is one accessible parking space in the Subject Facility's parking lot, located to the right of the access aisle, as the car drives in.

126.     There is one access aisle in the Subject Facility's parking lot, located to the left of the accessible parking space, as the car drives in.

127.     "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

128.     There is no sign containing the designation "van accessible" in the Subject Facility's parking lot in violation of 2010 Standards §502.6.

129.     There is no identification sign identifying an accessible van parking space in the Subject Facility's parking lot in violation of 2010 Standards §502.6.

130.     The identification sign identifying an accessible parking space in the Subject Facility's parking lot is located 54 inches above the ground surface in violation of 2010 Standards §502.6.

131.      "**Van Parking Spaces.** For every six or fraction of six parking *spaces* required by 208.2 to comply with 502, at least one shall be a van parking *space* complying with 502." 2010 Standards §208.2.4.

132.      "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. **EXCEPTION:** Van parking spaces shall be permitted to be 96 inches (2440 mm) wide minimum where the access aisle is 96 inches (2440 mm) wide minimum." 2010 Standards §502.2.

133.      "**Width.** Access aisles serving car and van parking *spaces* shall be 60 inches (1525 mm) wide minimum." 2010 Standards §502.3.1.

134.      In the Subject Facility's parking lot, the accessible parking space is 113 inches wide.

135.      In the Subject Facility's parking lot, the access aisle is 60 inches wide.

136.      There is no accessible van parking space in the Subject Facility's parking lot in violation of 2010 Standards §208.2.4.

137.      "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

138.      "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve.

20

Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

139.      Thus, maximum permissible slopes of accessible parking spaces and access aisles serving them must not be steeper than 1:48, which is equivalent to 2.08%. 2010 Standards §502.4.

140.      Defendants grossly violated §502.4 of 2010 Standards.

141.      In the Subject Facility's parking lot, the accessible parking space has a cross slope of 4.2%, which is equivalent to 1:23.81 in violation of 2010 Standards §502.4.

142.      In the Subject Facility's parking lot, the access aisle has a cross slope of 5.6%, which is equivalent to 1:17.86 in violation of 2010 Standards §502.4.

143.      "**General**. Space under an *element* between the finish floor or ground and 9 inches (230 mm) above the finish floor or ground shall be considered toe clearance and shall comply with 306.2. 2010 Standards §306.2.1.

144.      "**Maximum Depth**. Toe clearance shall extend 25 inches (635 mm) maximum under an *element*." 2010 Standards §306.2.2.

145.      "**Minimum Required Depth**. Where toe clearance is required at an *element* as part of a clear floor *space*, the toe clearance shall extend 17 inches (430 mm) minimum under the *element*." 2010 Standards §306.2.3.

146.      "**Width**. Toe clearance shall be 30 inches (760 mm) wide minimum." 2010 Standards §306.2.5.

147.      "**General**. *Space* under an *element* between 9 inches (230 mm) and 27 inches (685 mm) above the finish floor or ground shall be considered knee clearance and shall comply with 306.3." 2010 Standards §306.3.1.

148.     "**Maximum Depth**. Knee clearance shall extend 25 inches (635 mm) maximum under an *element* at 9 inches (230 mm) above the finish floor or ground." 2010 Standards §306.3.2.

149.     "**Minimum Required Depth**. Where knee clearance is required under an *element* as part of a clear floor *space*, the knee clearance shall be 11 inches (280 mm) deep minimum at 9 inches (230 mm) above the finish floor or ground, and 8 inches (205 mm) deep minimum at 27 inches (685 mm) above the finish floor or ground." 2010 Standards §306.3.3.

150.     In Sunoco Shop, there is no knee and toe space under the counter, in violation of 2010 Standards §306.2.1, §306.2.2, §306.2.3, §306.2.5, §306.3.1, §306.3.2, and §306.3.3.

151.     Plaintiff intends on visiting the Subject Facility again within six months of the filing of this Complaint, or even sooner, as soon as the barriers to access, meticulously detailed in this Complaint, are removed. The purpose of that return visit would be to be a regular customer, who comes to enjoy goods and services offered at the Subject Facility, as well as to determine whether, and when, the Subject Facility has been made accessible, and to maintain standing for this lawsuit for Plaintiff's advocacy purposes, so that other disabled individuals would be able to enjoy the Subject Facility in the same way as able-bodied customers do, as well as to ensure that Defendants' discrimination of the disabled ends.

152.     Plaintiff strongly intends on visiting the Subject Facility again to enjoy the same access, the same experiences, the same goods, and the same services as are available to Defendants' able-bodied customers, as well as for advocacy purposes, but does not intend, nor has any desire whatsoever, to continue to repeatedly subject herself to Defendants' unequal treatment and blatant discrimination of her through their architectural barriers to

equal access and engage in the futile gesture of attempting to patronize the Subject Facility, a business of public accommodation, known to Plaintiff to have numerous and continuing pervasive architectural barriers to equal access for wheelchair users, until Defendants remediate violations at their Subject Facility.

153.    Plaintiff recently traveled to the Subject Facility as a customer, as well as an independent advocate for the disabled, encountered and/or observed the architectural barriers to access, which are detailed in this Complaint, engaged these barriers where physically possible, suffered legal harm, legal injury, and legal damages, and will continue to suffer such harm and injury as a result of the illegal barriers to equal access present at the Subject Facility until the Court issues an injunction ordering Defendants to remove their architectural barriers and change their policies and procedures to make their Subject Facility equally accessible to all.

154.    Plaintiff will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. To remedy this discriminatory situation, Plaintiff requires an inspection of the Subject Facility to measure and photograph architectural barriers that are in violation of the ADA to determine the areas of non-compliance with the law.

155.    The discriminatory violations described above are not an exhaustive list of Defendants' current barriers to equal access and violations of the ADA, because Plaintiff was unable to access and assess all areas of the Subject Facility due to the architectural barriers encountered. A complete list of the Subject Facility's ADA violations affecting Plaintiff as a wheelchair user, as well as putting in place a plan of remedial measures

necessary to remove them, will require an on-site inspection by Plaintiff's representatives, pursuant to Federal Rule of Civil Procedure 34.

156.    Defendants have failed to maintain the accessible elements at the Subject Facility. They neglected their continuing duty to review, inspect, and discover transient accessible elements, which by nature of their design or placement, frequency of usage, exposure to weather and/or other factors, are prone to shift from compliant to noncompliant, so that these elements are discovered and remediated.

157.    Defendants have failed and continue to fail to alter their inadequate maintenance practices to prevent future recurrence of noncompliance with dynamic accessible elements at the Subject Facility in violation of 28 CFR §36.202 and §36.211.

158.    The architectural barriers, described above, made it impossible for Plaintiff, as a wheelchair user, to experience the same access to the goods, services, facilities, privileges, advantages, and accommodations of the Subject Facility as Defendants' able-bodied customers.

159.    Defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

160.    Since 1992, Defendants have altered the areas in their Subject Facility, which affect, or could affect, access to or usability of their place of public accommodation.

161.    Accessible elements at the Subject Facility have been altered and/or constructed since 2010.

162.    The foregoing violations are violations of the 1991 ADAAG, and the 2010 ADAAG, as adopted by the U.S. Department of Justice. In instances where the 2010

ADAAG standards do not apply, the 1991 ADAAG standards apply, and the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

163.     The removal of the physical barriers, dangerous conditions, and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. §12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. §36.304.

164.     It is readily achievable to remediate every one of the violations described above.

165.     Removal of the physical barriers and dangerous conditions present at the Subject Facility is readily achievable because of the site conditions, the structural design of the Subject Facility, and the straightforward nature of the necessary modifications.

166.     To assist businesses in offsetting the costs associated with complying with the ADA and removing barriers to access for individuals with disabilities, §44 of the IRS Code provides a tax credit for small business owners, and §190 of the IRS Code provides a tax deduction for all business owners, including Defendants.

167.     Removal of the architectural barriers and dangerous conditions at the Subject Facility is readily achievable because of the relative low cost of the necessary modifications.

168.     Defendants have financial resources to make the modifications, including the financial assistance made available to Defendants by the government pursuant to §44 and/or §190 of the IRS Code.

169.     The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

170.     By continuing to maintain and/or operate the Subject Facility with discriminatory conditions in violation of the ADA, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to able-bodied individuals.

171.     Defendants are required to remove existing architectural barriers to the disabled when such removal is readily achievable for its places of public accommodation that have existed prior to January 26, 1992. 28 CFR 36.304(a).

172.     If there has been an alteration to Defendants' place of public accommodation since January 26, 1992, then Defendants are required to ensure to the maximum extent feasible that the altered portions of the Subject Facility are readily accessible to and usable by individuals with disabilities, including people who use wheelchairs. 28 CFR 36.402.

173.     If Defendants' Subject Facility was designed and constructed for first occupancy after January 26, 1993, as defined in 28 CFR 36.401, then they must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

174.     To date, Defendants have failed to comply with the above mandates.

175.     Defendants have violated their statutory obligation to ensure that their policies, practices, and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for Plaintiff.

176.     Defendants violated their obligation to remove architectural barriers to let disabled Plaintiff enjoy goods and services provided by the public accommodation under their control, thus discriminating against her.

177.     Plaintiff's requested relief serves the public interest.

178.     To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remediated, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

179.     Pursuant to the ADA, 42 U.S.C. §12101, §12182, and 28 C.F.R. §36.304, Defendants were required to make their Subject Facility accessible to persons with disabilities.

180.     Defendants should have removed architectural barriers by January 26, 1992. To date, Defendants have failed to comply with that mandate.

181.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 C.F.R. §503.

182.     It was not structurally impracticable for Defendants to make the Subject Facility accessible.

183.     Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by Defendants.

184.     Defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

185.     Accommodations to Plaintiff and removal of architectural barriers at the Subject Facility by Defendants are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

186.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

187.     Defendants' failure to make their Subject Facility accessible denied Plaintiff an equal opportunity to participate in, or to benefit from, services, or accommodations, because of her disability.

188.     The effect of the practices complained of has been to deprive Plaintiff of the full and equal enjoyment of the Subject Facility and to otherwise adversely affect her status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

189.     The Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

190.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, Plaintiff to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

191.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable.

192.     Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil laws, and the New York State and City Human Rights laws, and discriminate against Plaintiff.

193.     The inexcusability of Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time, they

operated at a profit, should have accumulated sufficient funds to make alterations and had

numerous opportunities to remove the architectural barriers and end discrimination, but did

not do so.

194.     By not removing the architectural barriers, which barred Plaintiff's access,

inconvenienced, embarrassed, and humiliated her, Defendants gave a crystal-clear message

to Plaintiff that her patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

195.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth

in this complaint, as if fully set forth herein.

196.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any
> person, being the owner, lessee, proprietor, manager,
> superintendent, agent or employee of any place of public
> accommodation … because of the … disability … of any
> person, directly or indirectly, to refuse, withhold from or
> deny to such person any of the accommodations, advantages,
> facilities or privileges thereof … to the effect that any of the
> accommodations, advantages, facilities and privileges of any
> such place shall be refused, withheld from or denied to any
> person on account of … disability … .

> NYS Executive Law §296(2)(a)

197.     The Subject Facility in a place of public accommodation, as defined in New York

State Human Rights Law §292(9).

198.     Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

199.     Defendants are in violation of the New York State Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

200.     Defendants do not provide Plaintiff with equal opportunity to use their public accommodation.

201.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

202.     Defendants have not provided Plaintiff with evenhanded treatment in violation of New York State Human Rights Law §296.

203.     Defendants' unequal treatment of Plaintiff was demonstrated when she was discriminated against.

204.     Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied her the accommodations, advantages, facilities, or privileges of their public accommodations.

205.     Defendants have demonstrated that Plaintiff's patronage is unwelcome, unwanted, undesirable, unacceptable, and objectionable.

206.     In violation of the New York State Human Rights Law, Defendants have discriminated against Plaintiff.

207.     Plaintiff demands compensatory damages from Defendants in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).

## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

208.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

209.     Defendants have violated Plaintiff's civil rights because of her disability.

210.     Plaintiff is entitled to recover the penalty prescribed by New York State Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from Defendants.

211.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Law

212.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

213.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:
>> 1. Because of any person's actual or perceived … disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation;
>
> NYC Admin. Code §8-107(4)

31

214.    Defendants have not reasonably accommodated Plaintiff in violation of New York City's Administrative Code §8-102(4), (16), (17), (18), §8-107(4) and §8-107(15).

215.    In violation of the New York City Administrative Code, Defendants have unlawfully discriminated against Plaintiff.

216.    Reasonable accommodations and modifications are necessary to enable Plaintiff with the ability to enjoy non-restricted access and use of Defendants' Subject Facility.

217.    In violation of the New York City Administrative Code the owners, operators, lessees, proprietors, managers, agents and/or employees of the Subject Facility have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied her the accommodations, advantages, facilities, or privileges thereof.

218.    In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that Plaintiff's patronage is unwelcome, objectionable and not acceptable.

219.    Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to the benefits, accommodations, and services of the Subject Facility.

220.    Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

221.    Plaintiff demands compensatory damages in the amount of $1,000 from Defendants under the New York City Human Rights Law, NYC Admin. Code §8-125.

## ATTORNEY'S FEES AND COSTS

222.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this

action.  Plaintiff is entitled to have her reasonable attorney's fees, including litigation

expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28

C.F.R. §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New

York City Human Rights Law, the Court may award the prevailing party reasonable

attorney's fees.  Under that law's definition "prevailing" includes a plaintiff, whose

commencement of litigation has acted as a catalyst to effect policy change on the part of

the defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the
> Court, in its discretion, may award the prevailing party
> reasonable attorney's fees, expert fees and other costs. For
> the purposes of this subdivision, the term "prevailing"
> includes a Plaintiff whose commencement of litigation has
> acted as a catalyst to effect policy change on the part of the
> defendant, regardless of whether that change has been
> implemented voluntarily, as a result of a settlement or as a
> result of a judgment in such Plaintiff's favor. The Court shall
> apply the hourly rate charged by attorneys of similar skill
> and experience litigating similar cases in New York County
> when it chooses to factor the hourly rate into the attorney's
> fee award.
>
> NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

223.     Plaintiff demands compensatory damages in the amount of $1,000 from Defendants

under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York

City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other than what a decent and reasonable individual would suffer when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

224.     Plaintiff requests statutory monetary damages in the sum of $500 from Defendants to compensate her for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person* [emphasis added] who shall violate any of the provisions of New York Civil Rights Law §40-d 'shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any Court of competent jurisdiction in the county in which the defendant shall reside. …   [T]his Court has the authority to order Defendant to pay Plaintiff the $500 in statutory damages contemplated by the New York Civil Rights Law for the disability discrimination Plaintiff has suffered….
> Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

225.     The reason Plaintiff requests $500 from Defendants, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here, and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## INJUNCTIVE RELIEF

226.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility to make it readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, the New York State Civil Rights Law, the New York State Human Rights Law, the New York City Human Rights Law and close the Subject Facility until requisite modifications are completed.

227.     Plaintiff requests the Court to issue a permanent injunction enjoining Defendants from disability discrimination.

228.     Plaintiff requests the Court to issue a permanent injunction and order Defendants to alter their Subject Facility to make it readily accessible to and usable by individuals with disabilities. To achieve that, Plaintiff requests the Court to adapt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provides her with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. Plaintiff further requests that the injunction requires Defendants to implement architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

229.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices, and procedures, so that Plaintiff would not be subject to further unlawful discrimination.

## DECLARATORY RELIEF

230.     Plaintiff is entitled to declaratory relief for the violations committed by Defendants, specifying the rights of Plaintiff as to the removal of the architectural barriers from the Subject Facility by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully demands judgment against Defendants, jointly and severally, and requests that this Court:

A.     Grant a permanent injunction

   i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

   ii.) Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, Plaintiff and other individuals with disabilities;

   iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

   iv.) Ordering Defendants to provide auxiliary aids, or services, or to modify their policies, or procedures, or provide an alternative method, so that Plaintiff, and other disabled individuals, would be able to obtain the full and equal enjoyment of the

Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, and the New York State and City Human Rights Laws; and

v.) Ordering Defendants to make the Subject Facility readily accessible to and usable by Plaintiff and other individuals with disabilities.

B.    Enter declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil laws, the New York State and City Human Rights laws, and declare the rights of Plaintiff as to Defendants' policies, procedures, facilities, goods and services offered to the public;

C.    Enter declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

D.    Enter an order requiring Defendants to alter their Subject Facility and amenities to make them accessible to, and usable by, Plaintiff and other individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Law, and the New York State and City Human Rights laws;

E.    Hold Defendants liable for $500 in statutory monetary damages for each violation and award that sum to Plaintiff pursuant to the New York State Civil Rights Laws §40-c and §40-d;

F.    Hold Defendants liable for compensatory damages in the amount of $1,000 under the New York State and City Human Rights laws.

G.   Retain its jurisdiction over Defendants until their unlawful practices, acts and omissions no longer exist;

H.   Find that Plaintiff is a prevailing party in this litigation.

I.   Award attorney's fees, expert fees, costs, expenses, and interest together with such other and further relief at law, or in equity, to which Plaintiff may be entitled; and

J.   Award such other and further relief as it deems necessary, just, and proper.

## JURY DEMANDED

Plaintiff demands a trial by jury of all the issues of fact and damages.

Dated: August 5, 2022

*Michael Grinblat*
Michael Grinblat, Esq. (4159752)

Attorney for Plaintiff
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*